IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT TEBELMAN, | ) | CASE NO. 3:10 CV 2271 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| TIMOTHY BRUNSMAN, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Statements of Facts and of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    A.    The underlying facts and the state trial . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-
    B.    Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
         1.    Ohio appeals court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
         2.    The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . . -12-
    C.    Petition for writ of habeas corpus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -13-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
         1.    AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
         2.    Non-cognizable state law claims . . . . . . . . . . . . . . . . . . . . . . . . -19-
    C.    Application of standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -21-
         1.    Ground one – contending that the minor victim was improperly allowed to testify – should be dismissed on the merits since the decision on the state appeals court denying this claim was not an unreasonable application of clearly established federal law. . . . . . . . . . . . . . -21-
         2.    Ground two – alleging the use of inadmissible hearsay – should be denied on the merits since the decision of the state appeals court that denied this claim was not an unreasonable application of clearly established federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

3.     Ground three – that the verdict was against the manifest weight of the evidence and not supported by sufficient evidence – should be dismissed insofar as it raises the non-cognizable claim of manifest weight of the evidence and denied in part as to the sufficiency of the evidence. The decision of the state court in that respect was not contrary to or an unreasonable application of clearly established federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -35-

4.     Ground four – that the trial court abused its discretion in sentencing Tebelman to the maximum sentence – should be dismissed as non-cognizable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -39-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -41-

## Introduction

Before me by referral[1] is the *pro se* petition of Robert Tebelman for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Tebelman is currently incarcerated at the Lebanon Correctional Institution in Lebanon, Ohio, where he is serving a life sentence, without the possibility of parole, imposed by the Putnam County Court of Common Pleas after he was found guilty at a jury trial in 2009 of rape of a child under the age of ten years old.[3]

In his petition, Tebelman raised four grounds for relief.[4] For the reasons that follow, I recommend finding that the state's positions are well taken and that the petition should be dismissed.

---

[1] This matter was referred to me under Local Rule 72.2 by District Judge Jack Zouhary by a non-document order on November 27, 2010.

[2] ECF # 1 at 1.

[3] *Id.*

[4] *Id.* at 6-9.

## Statements of Facts and of the Case

**A.      The underlying facts and the state trial**

The facts that follow come from the decision of the Ohio Court of Appeals.[5]  In 2008, Robert Tebelman, Lacy, and her daughter, G.B., age five, were living together in Lacy's father's home in Columbus Grove, Ohio.[6]  Tebelman was G.B.'s main caretaker during this time period because Lacy had an injured back.[7]

On November 4, 2008, Tebelman did not walk G.B. to the bus as usual but instead drove her to school.[8]  At school, it was noticed by her teachers that G.B. was visibly upset.[9]  This was noticed because G.B. was a generally happy child.[10]  A little later in the day, the school's maintenance supervisor heard G.B. in the restroom slamming the stall doors closed and calling, "Mommy, Mommy, where are you?"[11]

After school, Tebelman met G.B. as she got off the school bus.[12]  Lacy had made plans for G.B. to spend the weekend with Kim Fletcher, G.B.'s paternal grandmother, while Lacy

---

[5] Facts found by the state appellate court on its review of the record are presumed correct.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[6] ECF # 9, Attachment (state court record) (appeals court opinion) at 70.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 71.

[11] *Id.*

[12] *Id.*

was out of town.[13]  Kim was delayed and informed Lacy that she would not be able to pick

G.B. up until 6:30 p.m.[14]  Tebelman and G.B. stayed alone at their home until Kim arrived.[15]

Kim took G.B. to her home and left G.B. with Mark, G.B.'s paternal grandfather,

while she attended a meeting at 7:00 p.m.[16]  G.B. was playing in the dining room and Mark

was watching television when Ron, Mark's friend, stopped by at 7:15 p.m.[17]  Ron stayed for

a half hour and then returned again a little after eight with Kim and his wife, Peggy.[18]  Mark

explained to Kim that he had noticed that G.B. was grabbing herself in the vaginal area.[19]

After Ron and Peggy left, Kim asked G.B. if she was "hurting down there.[20]  G.B.

replied, "Yes, Grandma.  I'm peeing hot pee."[21]  As Kim was trying to apply a topical vaginal

cream that was prescribed for yeast infections, she noticed "redness from her vagina to her

anus as well as a little bit of dried blood."[22]  Kim asked if anything had happened, and G.B.

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

again complained of "hot pee."[23]  When asked if anyone had touched her down there, G.B.

appeared embarrassed and did not respond.[24]  Kim asked again, and G.B. responded, "Robbie

did," as a reference to Tebelman.[25]  Kim inquired further, and G.B. began to explain certain

games that Tebelman would play that would involve inserting objects into her anus and that

Tebelman had inserted his fingers into her vagina.[26]

      Kim immediately called Chris, her son and G.B.'s father, to express her concern.[27]

Chris said that they would take G.B. to the hospital after work the following day – a delay

due, at least in part, to a desire to let "heated feelings subside."[28]  The next day, Kim met

Chris at St Rita's Hospital in Lima with G.B.[29]  They were then informed that the hospital

did not have anyone able to perform a Sexual Assault Nurse Examination (SANE) and that

they would have to go to a hospital in Toledo.[30]

---

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

At the Toledo hospital, SANE nurse Kelly Michael, examined G.B. and found a small tear in her vagina and two lacerations on her anus.[31]  During the examination G.B. complained to the examining nurse of discomfort in her vagina and also told the SANE nurse that Tebelman hurt her by playing "the porcupine game" and by inserting things into her rectum.[32]

G.B.'s description of Tebelman's "games" and the results of the physical examination prompted the SANE nurse to call a physician whose further examination of G.B. confirmed the findings of the SANE examination.[33]

Tebelman was indicted on November 10, 2008, on one count of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b).[34]  The court found G.B. to be competent to testify at trial on March 23, 2009.[35]  After a jury trial where several witnesses testified, including G.B., Tebelman was found guilty of rape and sentenced to life imprisonment without parole by the trial court on April 13, 2009.[36]

---

[31] *Id.*

[32] *Id.*

[33] *Id*.

[34] *Id.* at 72.

[35] *Id.*

[36] *Id.*

-6-

**B.    Direct Appeal**

**1.    *Ohio appeals court***

Tebelman filed a timely appeal,[37] raising four assignments of error:[38]

Assignment of Error 1:  The trial court erred when it found the alleged victim was competent to testify in violation of Tebelman's rights to due process and a fair trial pursuant to evid. R. 601(A), the fifth, sixth and fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.[39]

Assignment of Error 2:  The trial court erred in permitting the introduction of inadmissible hearsay in violation of the fifth, sixth, and fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.[40]

Assignment of Error 3:  The trial court violated Tebelman's right to due process under the fifth, sixth, and fifteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution when it upheld the jury verdict as it was not supported by the sufficiency of the evidence and was against the manifest weight of the evidence.[41]

Assignment of Error 4:  The trial court failed to consider the sentencing statutes in the R.C. § 2929.11-2929.14 and abused its discretion in sentencing Tebelman to the maximum sentence.[42]

----

[37] *Id.* at 6.  The conviction and sentence were entered on April 13, 2009, and the notice of appeal was filed on April 30, 2009.  Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within thirty days of the judgment being appealed.  *See also*, *Smith v. Konteh*, 2007 WL 171978, at *2 (N.D. Ohio Jan. 18, 2007).

[38] *Id.* at 12 (Tebelman brief).

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*

Under the first assignment of error, Tebelman argued that, "Under Ohio Rule of Evidence 601(A), children under the age of ten are not competent to testify as a witness where the child appear incapable of receiving just impression of the facts and transactions respecting which they are examined, or of relating them truly."[43]  Tebelman continued that in the court's determination of competence in a witness under the age of ten, the court must consider the factors set forth in *State v. Frazier*:[44]  (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful.[45]  Tebelman pointed out that the lower court has the sound discretion to determine the competency of a minor to testify in trial.[46]

Under that five-part rubric, Tebelman argued that in the voir dire hearing G.B.'s testimony did not establish competence as she did not demonstrate sufficient the ability to "talk about the difference between the truth and a lie, the consequences of telling a lie, and there was not enough consistent testimony sufficient to demonstrate her ability to receive facts and events, to recall them, or to communicate them."[47]  Tebelman maintained that there

---

[43] *Id.*

[44] *State v. Frazier*, 61 Ohio St. 3d 247, 574 N.E.2d 483 (1991).

[45] ECF # 9, Attachment at 18 (citing *Frazier*, 61 Ohio St. 3d at 250-51, 574 N.E.2d at 486-87).

[46] *Id.* at 17.

[47] *Id.* at 18.

were several occasions in the testimony transcript where "G.B. was repeatedly inconsistent and contradictory, and failed to demonstrate her competency to testify as a witness."[48] Tebelman claimed that "the trial court made no inquiry into whether the child could discern from imaginative, make-believe, or pretend and real events (extremely relevant given the child's accusations regarding porcupines, blueberry bushes, and Dora the Explorer), nor did it make sufficient inquiry into the child's ability to discern sequence of events or time or to recall the facts or events."[49]  Tebelman argued, "The testimony provided by G.B. failed to establish that she was competent and thus the trial court abused its discretion in finding her competent to testify."

After citing to extensive portions of the transcript of the competency hearing going to each element of the *Frazier* test,[50] the Ohio appeals court, in turn, held that, "G.B.'s testimony clearly established that she satisfied the standards in *Frazier* and as such we cannot find that the trial court abused its discretion."[51]  Thus, the Court overruled Tebelman's first assignment of error.[52]

In his second assignment of error, Tebelman argued that, "Each of G.B.'s statements which came into evidence through Kim Fletcher, Robin Priest, Jess Stokeland, and the

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 73-76.

[51] *Id.* at 76.

[52] *Id.*

-9-

medical professionals should have been excluded as inadmissible hearsay."[53]  In his argument, Tebelman claimed, "There is no applicable hearsay exception which applies to any of this testimony reiterating statements made by G.B. and being asserted to prove the truth of the matter being asserted."[54]

Citing the Ohio case authority, Tebelman contended that the general hearsay exception for medical professionals is inapplicable where "[i]t is readily apparent that [the doctor's] primary function was to collect evidence to support a conviction.[55] He claimed that because the medical professionals in this case were improperly acting in the role of police investigators, the responses they elicited from G.B. were inadmissible hearsay statements from the alleged victim.[56]

In the decision, the state court found that when considering a claim that statements to an examining professional that are otherwise hearsay are admissible under an exception to the hearsay rule, the primary inquiry is whether the statements were made for the purpose of diagnosis and treatment rather than for some other purpose.[57]  The court then proceeded to overrule Tebelman's second assignment of error because on the record it was "clear that the

---

[53] *Id.* at 21.

[54] *Id.*

[55] *Id.*

[56] *Id.* at 22.

[57] *Id.* at 78.

primary purpose for the medical professionals' interaction with G.B. was to provide medical treatment."[58]

In his third assignment of error, Tebelman posed a manifest weight argument regarding his case.[59]  He maintained an argument that G.B. was not competent to testify and, therefore, provided inadmissible testimony.[60]  He continued his argument that the court found no scientific evidence establishing that Tebelman committed the rape and had failed to consider alternative suspects and possibilities.[61]  Based on the errors around the admission of inadmissible hearsay testimony and G.B.'s incompetence to testify, Tebelman stated that, "the jury would have had no choice but to find Tebelman not guilty on all counts as there was no other evidence establishing Tebelman as the offender."[62]

The appeals court found that, "after viewing all the evidence in a light most favorable to the prosecution, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Tebelman committed the offense of rape."[63]  Based on this finding they overruled his third assignment of error. [64]

---

[58] *Id.* at 79.

[59] *Id.* at 23.

[60] *Id.* at 24.

[61] *Id.*

[62] *Id.* at 25.

[63] *Id.* at 80.

[64] *Id.*

In the fourth assignment of error, Tebelman recognized that the trial court has the ability to impose any sentence within the statutory range, but argued that the court abused its discretion in this case.[65]  Tebelman contended because no severe physical injuries were involved, it might have been fitting for the lower court to impose a lesser sentence.[66]

In regards to the fourth assignment of error, the court noted that, "the trial court is not required to discuss the factors on the record or even to state on record that it has considered the statutory language."[67]  Thus, due to the fact that the trial court acted well within its statutory authority, the appeals court overruled the fourth assignment of error.[68]

On February 16, 2010, the court of appeals affirmed the conviction of Tebelman for rape and his sentence of life imprisonment without parole.[69]

## 2.    *The Supreme Court of Ohio*

On June 17, 2010, Tebelman, *pro se*, filed a notice of appeal[70] and motion for a delayed appeal[71] with the Supreme Court of Ohio.  In support of the motion to file a delayed

---

[65] *Id.* at 26.

[66] *Id.* at 27.

[67] *Id.* at 80.

[68] *Id.*

[69] *Id.* at 70-81.

[70] *Id.* at 82.

[71] *Id.* at 84-87.  To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a), a notice of appeal must be filed within 45 days of entry of the appellate judgment for which review is sought.  *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010).

appeal Tebelman claimed that neither his appointed appellate counsel nor the clerk of the appeals court had properly informed him of the decision of that court.[72] In such a circumstance he questioned, "whether the State should be allowed to stop an indigent appellant's attempts to litigate his constitutional claims by failing to notify him in a timely fashion causing him to be late and then turn around and impose the procedural bar to keep him from litigating."[73]

On August 25, 2010, the Supreme Court of Ohio denied Tebelman's motion for a delayed appeal and dismissed his case.[74]

Tebelman did not seek a writ of certiorari from the United States Supreme Court.

## C.    Petition for writ of habeas corpus

On October 6, 2010, Tebelman filed a *pro se* petition for a writ of habeas corpus.[75] In this petition he substantially raises the same four grounds for relief to the federal habeas court as were raised to the Ohio courts on direct appeal.

> Ground for Relief 1:  The trial court erred when it found the alleged victim was competent to testify in violation of Tebelman's rights to due process and a fair trial pursuant to evid. R. 601(A), the fifth, sixth and fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.[76]

---

[72] *Id.* at 85.

[73] *Id.* at 86.

[74] *Id.* at 123.

[75] ECF # 1.

[76] *Id.* at 5.

Ground for Relief 2:  The trial court erred in permitting the introduction of inadmissible hearsay in violation of the fifth, sixth, and fourteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution.[77]

Ground for Relief 3:  The trial court violated Tebelman's right to due process under the fifth, sixth, and fifteenth amendments to the United States Constitution, and Article I, Section 10 of the Ohio Constitution when it upheld the jury verdict as it was not supported by the sufficiency of the evidence and was against the manifest weight of the evidence.[78]

Ground for Relief 4:  The trial court failed to consider the sentencing statutes in the R.C. § 2929.11-2929.14 and abused its discretion in sentencing Tebelman to the maximum sentence.[79]

The State, in its return of the writ,[80] did not raise any claim of procedural default based on Tebelman's failure to timely file for an appeal with the Supreme Court of Ohio.  Rather, the State contends that two of Tebelman's four claims for federal habeas relief are without merit, while the remaining claims are not cognizable because they raise only matters of state law.[81]

After unsuccessfully seeking appointment of counsel[82] Tebelman filed a traverse.[83]

---

[77] *Id.* at 6.

[78] *Id.* at 8.

[79] *Id.* at 9.

[80] ECF # 9.

[81] *Id.* at 10-29.

[82] *See*, ECF # 12.

[83] ECF # 14.

-14-

## Analysis

**A.      Preliminary observations**

Before   proceeding   to   an   analysis   of   the   petition,   I   make   the   following   initial observations:

1.      Tebelman is currently in state custody as a result of his 2009 conviction and sentence by an Ohio court and was so incarcerated at the time this petition was filed.  Thus, Tebelman meets the "in custody" requirement of the federal habeas statute that vests this Court with jurisdiction over the petition.[84]

2.      This petition was filed within the one-year limitations period of the applicable statute.[85]  Specifically, even though Tebelman did not timely file his notice of appeal in the Ohio Supreme Court, the decision of the Ohio appeals court, which closed the state appeals process, was entered in February, 2010, and this petition filed in October of that same year.

3.      In addition, my own review of the docket in this District establishes that this is not a second or successive petition for federal habeas relief arising   from   this   conviction   and   sentence   such   as   would   require approval from the Sixth Circuit before it could be filed in this Court.[86]

4.      Moreover,   subject   to   the   later   discussion   of   procedural   default,   it appears   that   the   claims   here   are   totally   exhausted   in   Ohio   courts   by virtue of the decision of the Supreme Court of Ohio not to accept for filing Tebelman's untimely appeal.[87]

---

[84] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[85] 28 U.S.C. § 2254(d)(1); *Hall v. Warden*, 662 F.3d 745, 749 (6th Cir. 2011).

[86] 28 U.S.C. 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[87] 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

-15-

5.    Finally, as noted, Tebelman's motion for appointment of counsel was denied,[88] and Tebelman has not requested an evidentiary hearing.[89]

Tebelman has apparently procedurally defaulted[90] his claims by not filing a timely appeal with the Ohio Supreme Court and that Court enforcing its procedural rule on the time for filing by not accepting Tebelman's late submission.[91]  But, as discussed, the State has not raised this procedural default in its return of the writ.

Procedural default constitutes an affirmative defense that the State must assert; otherwise, the defense may be considered waived.[92]  Because procedural default is not a jurisdictional matter, federal habeas courts need not raise the issue *sua sponte*.[93]  In the situation of an unasserted procedural default, the federal habeas court may review the claim on the merits.[94]  Alternatively, the court in its discretion may *sua sponte* dismiss a petition

---

[88] ECF # 12.

[89] 28 U.S.C. § 2254(e)(2).

[90] Absent cause and prejudice or actual innocence, a federal court will not reach the merits of federal habeas claims that were not addressed in state court due to the petitioner's failure to comply with an adequate and independent state rule that caused him to lose state review of those claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[91] *See*, *Coleman*, 501 U.S. at  740 (procedural default occurs when a state prisoner files an untimely appeal).

[92] *Trest v. Cain*, 522 U.S. 87, 89-90 (1997); *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc).

[93] *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005).

[94] *Johnson v. Mitchell*, 585 F.3d 923, 936 (6th Cir. 2009).  Indeed, the federal court need not address even an asserted claim of procedural default before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *see also*, *Hudson v. James*, 351 F.3d 212, 215-16 (6th Cir. 2003) (court need not address claimed procedural

-16-

as procedurally defaulted,[95] but preferably only after giving the petitioner a chance to respond.[96]

Here, consistent with the Sixth Circuit's teaching in *Johnson v. Mitchell*,[97] I recommend addressing Tebelman's claims on the merits despite an apparent, but unasserted, procedural default.[98]

**B.     Standards of review**

*1.     AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly

---

default where the issue was complex and unnecessary to resolution of the matter against the petitioner on the merits).

[95] *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004).

[96] *Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir.), *amended on rehearing*, 307 F.3d 459 (6th Cir. 2002).

[97] *Johnson*, 583 F.3d at 936.

[98] In making this recommendation I am mindful, as will be more fully developed below, that Tebelman's claims can be dismissed on the merits, and that Tebelman has attributed his late filing in the Ohio Supreme Court to actions of the state appeals court clerk and his appellate attorney, and so might arguably establish cause and prejudice for the procedural default.  Accordingly, in such a circumstance and where the State has not raised the issue, there would be little merit in putting Tebelman on notice of the perceived procedural default.  That action would simply extend the process of adjudicating this petition by providing him an opportunity to establish cause and prejudice to overcome the procedural default.

-17-

established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[99]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[100]  As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[101] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[102]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law

---

[99] 28 U.S.C. § 2254(d).

[100] *Williams v. Taylor*, 529 U.S. 362 (2000).

[101] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[102] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

erroneously or incorrectly."[103]  Rather, the state court holding may be disturbed only upon

showing that it was "objectively unreasonable."[104]

In addition, a state court may be found to have unreasonably applied clearly

established federal law if it unreasonably extends or unreasonably fails to extend a clearly

established federal legal principle to a new context.[105]

Finally, where a state court does not address the merits of a federal claim properly

presented to it, "the deference due [a state court decision by the federal habeas court] under

the AEDPA does not apply."[106]  Then, the federal court is to review the claim *de novo*.[107]

## 2.    *Non-cognizable state law claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners in

custody in violation of federal law.[108]  Accordingly, to the extent a petitioner claims that his

custody violates state law, he has failed to state a claim upon which federal habeas relief may

be granted.[109]  In such circumstances, a claim for federal habeas relief based solely on the

---

[103] *Williams*, 529 U.S. at 411.

[104] *Id.* at 409.

[105] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[106] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[107] *Id.*

[108] 28 U.S.C. § 2254(a).

[109] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[110]

A claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[111] The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness" of a trial.[112] Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[113]

The petitioner bears the burden of showing violation of a principle of fundamental fairness.[114]  In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[115] and may not second-guess a state court's interpretation of its own procedural rules.[116]  Further, while generally distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[117] the Sixth Circuit has recognized that

---

[110] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

[111] *Estelle*, 502 U.S. at 67-68.

[112] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[113] *Id.* at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[114] *Id.*

[115] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[116] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[117] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

"'[e]rrors that might not be so prejudicial as to amount to a deprivation of due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[118]

## C.  Application of standard

### 1.  *Ground one – contending that the minor victim was improperly allowed to testify – should be dismissed on the merits since the decision on the state appeals court denying this claim was not an unreasonable application of clearly established federal law.*

Tebelman asserts in his first ground for relief that the trial court improperly found the victim – then five years old – competent to testify at trial.[119]  After applying the five factors set forth by the Ohio Supreme Court in *Frazier* related to the competency requirements of Ohio Evidence Rule 601(A) as concern testimony from a child under the age of ten, the trial judge concluded from the child's answers to questions at a voir dire that G.B. was competent to testify against Tebelman.[120]  The appeals court, in turn, analyzed Tebelman's appellate challenge to that decision under a plain error analysis[121] in light of *Frazier* and its five-factor test, reviewed extensive portions of the voir dire transcript, and held that it was not plain error for the trial court to determine  that G.B. was competent to testify.[122]  Moreover, the

---

[118] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[119] ECF # 1 at 5.

[120] *Id.*

[121] The analysis was under plain error and not abuse of discretion because Tebelman had not made a contemporaneous objection to the competency finding as required by Ohio law. *See*, ECF # 9, Attachment at 72.

[122] ECF # 9, Attachment at 76.

Ohio appeals court found that even if the trial court erred in allowing G.B. to testify, such an error was harmless given the other evidence, including testimony from medical professionals, which supported conviction.[123]

Although the Ohio appeals court considered this issue solely as a matter of Ohio law, Tebelman raised the claim in that court as one of both federal constitutional law and state evidence law.[124] Accordingly, Tebelman fairly presented the federal claim to the Ohio court, and the state court denied the claim on the merits.  In a situation where the state court decides a fairly presented federal claim as a matter of state law, the federal habeas court reviews the state decision under a modified AEDPA standard.[125] In proceeding under that standard, the decision receives some, but less than full, deference, and the habeas court undertakes a careful review of the record and applicable law, reversing the state court's decision only if contrary to, or an unreasonable application of, clearly established federal law.[126]

As to the applicable law, I note initially that permitting an incompetent person to testify in this case would implicate Tebelman's federal constitutional rights under the Sixth and Fourteenth Amendments to meaningfully cross-examine a witness against him.[127] Thus, although the federal habeas court "does not review state court evidentiary rulings, [] review

---

[123] *Id.*

[124] *See*, *id*. at 17.

[125] *Vasquez v. Jones*, 496 F.3d 564, 569-70 (6th Cir. 2007).

[126] *Id.* (citing *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005).

[127] *Haliym v. Mitchell*, 492 F.3d 680, 700 (6th Cir. 2007).

is limited to whether petitioner can demonstrate a violation of his federal constitutional rights."[128]

In this instance, the Sixth Circuit's decision in *Haliym v. Mitchell*[129] is instructive. Similar to this case, *Haliym* involved a federal habeas claim that an Ohio trial court erred in admitting the testimony of a seven-year-old boy who witnessed a murder and then testified against the petitioner on trial for that crime.[130]  As here, the petitioner in *Haliym* argued that because the boy gave allegedly inconsistent or unreliable answers during the competency voir dire the court should have excluded his testimony under Ohio Evidence Rule 601.[131]

In affirming the district court's rejection of that claim, the Sixth Circuit in *Haliym* initially noted that the Confrontation Clause of the Sixth Amendment, as interpreted by the Supreme Court in *Maryland v. Craig*:[132]  "'(1) insures that the witness will give his statements under oath – thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; [and] (2) forces the witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth ....'"[133]

---

[128] *Id.* (citation omitted).

[129] *Id.*

[130] *Id.*

[131] *Id.*

[132] *Maryland v. Craig*, 497 U.S. 836 (1990).

[133] *Haliym*, 492 F.3d at 701 (quoting *Craig*, 497 U.S. at 845-46).

Based on these considerations in *Craig, Haliym* concluded first that the oath was a "necessary ingredient" of the right guaranteed by the Confrontation Clause since it "tests the witness' testimony for consistency against itself and the external world, as well as exposing bias, lack of capacity, credibility problems, or other deficiencies that undermine the value of the testimony to the trier of fact."[134]  Likewise, *Haliym* continued, "some minimal capacity for recording and relaying truthful information is a precondition to a meaningful oath to tell the truth, which is a necessary element of cross-examination."[135]  That said, however, *Haliym* stated that, although it would not attempt to define what constitutes the minimal conditions for competency to testify as a witness, it would consider the Confrontation Clause satisfied "if the witness is able to understand the concept of the truth and his duty to present truthful information to the court."[136]

In this case, as in *Haliym*, the question of the competence of the minor witness was argued and decided in state proceedings as a question of Ohio evidence law as understood in light of the Ohio Supreme Court decision in *Frazier*.  As relates to the federal constitutional standard articulated in *Haliym*, the final two elements of Ohio's *Frazier* test require the trial court to determine if the prospective child witness understands the concepts of truth and falsity and appreciates her responsibility to be truthful.[137]  Regarding both

---

[134] *Id.* at 702-03.

[135] *Id.* at 703.

[136] *Id.*

[137] *Frazier*, 61 Ohio St. 3d at 251, 574 N.E.2d at 487.

*Frazier* elements that constitute the federal Confrontation Clause right as understood by *Haliym*, the appeals court in this matter made express factual findings, with citations to the voir dire transcript, that:  (1) G.B. "understood the concepts of truth and falsity and the consequences of telling a lie;"[138] and (2) G.B. "appreciated her responsibility to be truthful at the hearing."[139]

Thus, in light of the applicable law and the record, the Ohio court, by analyzing this issue under the *Frazier* test, has, as did the state court in *Haliym*, correctly identified and applied the clearly established federal law applicable to this matter.[140] Further, Tebelman has not provided any basis by which this Court may reject the factual findings of the state appeals court cited above concerning G.B.'s understanding of truth and falseness or her responsibility to be truthful.  Specifically, although Tebelman argues extensively in his traverse that other portions of G.B.'s voir dire testimony not quoted by the state appeals court contain passages that he contends do not support the competency finding of that court,[141] the well-established rule is that state court findings of fact made in connection with a state evidentiary issue are "'binding for purposes of the constitutional inquiry [by a federal habeas court] absent clear and convincing evidence to the contrary.'"[142]

---

[138] ECF # 9, Attachment at 73.

[139] *Id.* at 74.

[140] *See*, *Haliym*, 492 F.3d at 703.

[141] ECF # 14 at 4-8.

[142] *Evans v. Mitchell*, 344 F. App'x 234, 239 (6th Cir. 2009) (quoting *Haliym*, 492 F.3d at 700).

-25-

Thus, inasmuch as the state appeals court correctly identified the controlling federal constitutional law applicable to this issue, and then made a binding finding that G.B. was competent to testify, I conclude, as did the Sixth Circuit in *Haliym* and *Evans v. Mitchell*,[143] that G.B.'s capacity to testify under oath against Tebelman "'was satisfied for purposes of the Confrontation Clause [because G.B. was] able to understand the concept of truth and [her] duty to present truthful information to the court.'"[144]

Accordingly, because Tebelman was not denied his rights under the Confrontation Clause, ground one of his petition on its merits fails because the state appeals court decision denying this claim was not an unreasonable application of clearly established federal law.

2.    ***Ground two – alleging the use of inadmissible hearsay – should be denied on the merits since the decision of the state appeals court that denied this claim was not an unreasonable application of clearly established federal law.***

In this ground for relief, Tebelman contends that the trial court impermissibly admitted hearsay testimony.[145]  As more fully discussed in the footnote, Tebelman has not

---

[143] *Id.*

[144] *Evans*, 344 F. App'x at 240 (quoting *Haliym*, 492 F.3d at 703).

[145] It should be noted that Tebelman actually never articulated with specificity in his habeas petition the particular statements he contends were improperly admitted as hearsay. Nor did Tebelman's traverse provide any more detail.  In fact, Tebelman in that traverse incorrectly stated that the state appeals court had ruled that statements from Jess Stokeland, G.B.'s caretaker, were impermissible hearsay, but that admitting them was harmless error. *See*, ECF # 14 at 9.  The State also incorrectly states that the appeals court approved of the admission of the victim's statements to Ms. Stokeland.  ECF # 9 at 14.  Actually, the state appeals court opinion explicitly said that a review of the record had established that Stokeland *did not* attempt to offer any hearsay testimony as to what G.B. may have said to her, but that Stokeland had testified only as to her (Stokeland's) impression of Kim Fletcher's mental state when Fletcher discovered the news about G.B.'s abuse.  ECF # 9, Attachment

-26-

fully or accurately described which particular statements he now contends were improperly

admitted by the state trial court. In fact, as more fully discussed in the footnote, Tebelman,

in a single reference in the traverse to his appellate brief, only alleges one specific, verifiable

instance of where the trial court purportedly admitted hearsay testimony in error – that of

social worker Diane Gable.[146]

As to Gable, the state appeals court noted that, in testifying for the prosecution, Gable,

a licensed social worker, testified that she had explained her role as a counselor to G.B. and

then engaged in play therapy with the victim to "assist [G.B.] in coping with her abuse."[147]

Gable testified that during one such play therapy session related to safe and unsafe touching

Gable had shown G.B. a picture of a girl in a swimsuit as a demonstration aid.[148]  Gable then

---

at 76 n.1.  Beyond this error, the traverse only mentions one other witness – social worker
Diane Gable – as potentially offering impermissible hearsay.  ECF # 14 at 10.  Although the
state appellate court decision substantiates that Gable was among those Tebelman alleged
offered impermissible hearsay testimony (ECF # 9, Attachment at 78), the fact remains that
Tebelman has not clearly and accurately set forth the facts supporting this claim as he is
required to do as to any other witness.  (*See*, Rule 2(c)(2) requiring that a habeas petition
"state the facts supporting each ground" for relief sought).  Even after giving this *pro se*
petition lenient construction as required (*See*, *Howard v. Wayne County Sheriff's Office*, 417
F. App'x 465, 466 (6th Cir. 2011)), it is difficult to recommend the correct adjudication of
a claim that is incompletely or incorrectly described.  This is particularly difficult where the
State's brief repeats the error.

[146] ECF # 14 at 10.

[147] ECF # 9, Attachment at 78.

[148] *Id.*

-27-

told the court that "G.B. pointed to the area between the girl's legs and stated that Tebelman had touched her 'who-who' with a porcupine."[149]  As the Ohio appeals court further noted:

> Gable further testified that when G.B. discussed the abuse she oscillated between stating that Tebelman had used a porcupine and his finger.  Gable testified that throughout the several therapy sessions she conducted, G.B. consistently identified Tebelman as the perpetrator and continued to state that he put his finger in her who-who and that they played the porcupine game in which he inappropriately touched her "butt."[150]

In addressing the issue of whether it was proper to admit this testimony from Diane Gable, along with that from four other medical professionals involved with G.B.'s case, the state appeals court initially determined that under Ohio Evidence Rule 803(4) statements made to medical professionals are admissible if the statements were made for purposes of diagnosis and treatment, or to describe past or present symptoms, as well to identify the cause or external source of "symptoms, pain, or sensations."[151]  Based on this rule, the court then noted that the final test of admissibility, particularly when the declarant is a child, involves assessing whether the statement was made for the purpose of diagnosis and treatment, or for some other purpose, and considering other factors such as the child's age, the child's motive to fabricate, the consistency of the child's declarations, and whether the child appreciated the need to be truthful to medical personnel.[152]

---

[149] *Id.*

[150] *Id.*

[151] *Id.* (quoting Ohio Evidence Rule 803(4)).

[152] *Id.* (citing *State v. Muttart*, 116 Ohio St. 3d 5, 875 N.E.2d 944 (2007)).

Employing this test, the appeals court concluded that G.B.'s statements to social worker Diane Gable were properly admitted.  The court initially noted that the Ohio Supreme Court in *State v. Muttart* had specifically included social workers among those diagnostic and treating professionals covered by Evidence Rule 803(4).[153]  Next, the court concluded from a review of the record that the primary purpose for Gable's interaction[154] with G.B. was "to provide medical treatment," with no indication that Gable had solicited G.B.'s comments in a leading manner.[155]  The appellate opinion then specifically observed that the record showed that:  (a) there was "no indication" that G.B. had a motive to fabricate, (b) G.B. understood when she made the statements that she was seeing Gable for the purpose of getting "better," and (c) G.B. consistently told the same version of events to all medical personnel over a six-month period.  Thus, given that the statements fell under the express terms of the evidence rule and that there were additional "indicia of reliability" derived from analysis of the *Muttart* factors, the appeals court found that the trial court did not abuse its discretion in admitting Gable's testimony as to what G.B. had told her.[156]

Although the state appeals court decided this issue as purely a matter of Ohio evidence law, Tebelman raised the issue as one involving both federal constitutional law and state

---

[153] *Id.* (citing *Muttart*, 116 Ohio St. 3d at 15, 875 N.E.2d at 955).

[154] The court included the other medical professionals in this review and conclusion. However, as noted, because Tebelman only directly named Gable's testimony in any of his habeas filings, the analysis here is only on that testimony.

[155] *Id.* at 79.

[156] *Id.*

evidence law, thus fairly presenting the federal issue to the Ohio courts.  As with the first

claim for relief, because the state court resolved the matter without addressing the federal

question, this Court must employ modified AEDPA review, which carefully considers the

applicable law and the record and reverses the state court only if its decision was contrary

to, or an unreasonable application of, clearly established federal law.

As the United States Supreme Court stated in *Crawford v. Washington*,[157] the

admission of a "testimonial" statement against a criminal defendant, without an opportunity

to cross-examine the declarant, "is sufficient to make out a violation of the Sixth

Amendment."[158]  But, *Crawford* also stated that:

> [w]here nontestimonial hearsay is at issue, it is wholly consistent with the
> Framer's design to afford the States flexibility in their development of hearsay
> law – as does *Roberts*,[159] and as would an approach that exempted such
> statements from Confrontation Clause scrutiny altogether.  Where testimonial
> evidence is at issue, however, the Sixth Amendment demands what the
> common law required:  unavailability and a prior opportunity for
> cross-examination.  We leave for another day any effort to spell out a
> comprehensive definition of 'testimonial.'"[160]

To the point, however, of ascertaining a working definition of what constitutes a

"testimonial" statement in the absence of some formulation by the Supreme Court, the Sixth

Circuit in *Cromer*[161] has provided a test for "[t]he threshold determination ... [of] whether the

---

[157] *Crawford v. Washington*, 541 U.S. 36 (2004).

[158] *Id.* at 68.

[159] *Ohio v. Roberts*, 448 U.S. 56 (1980).

[160] *Crawford*, 541 U.S. at 68.

[161] *United States v. Cromer*, 389 F.3d 662 (6th Cir. 2004).

-30-

statements at issue are 'testimonial' in nature."[162] *Cromer* teaches that such a test "focuses on whether the declarant intends to bear testimony against the accused. That intent, in turn, may be determined by querying whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime."[163] In that regard, as the Sixth Circuit later held in *United States v. Johnson*:[164] "[O]ur precedent makes it clear that the intent of ... the declarant determines whether the statements ... are testimonial."[165]

In sum, clearly established federal law provides that when a statement is nontestimonial, its admissibility is determined only by application of applicable evidentiary rules.[166]

That said, however, it is also clear that even if a Confrontation Clause violation occurred with the admission of impermissible hearsay, such as violation is subject to harmless error review.[167]Determination of whether an error was "harmless" requires the reviewing court to determine whether the error had a "substantial and injurious effect or

---

[162] *Id.* at 672.

[163] *Id.* at 675.

[164] *United States v. Johnson*, 581 F.3d 320 (6th Cir. 2009).

[165] *Id.* at 325.

[166] *Davis v. Washington*, 547 U.S. 813, 821 (2006); *Johnson*, 581 F.3d at 326.

[167] *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986); *Vasquez*, 496 F.3d at 574.

influence in determining the jury's verdict."[168]  In that respect, five factors are relevant to determining whether an error was harmless:  (1) "the importance of the witness' testimony in the prosecution's case," (2) "whether the [witness'] testimony was cumulative," (3  "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points," (4) "the extent of cross-examination otherwise permitted," and (5) "the overall strength of the prosecution's case."[169]

Finally, regardless of whether the particular out-of-court statement at issue is or is not testimonial, or how its admission, if testimonial, would be seen under a *Brecht v. Abrahamson* harmless error analysis,[170] *Crawford* directly holds that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."[171]

Here, as the State points out in the return of the writ, G.B., who made the statements to social worker Gable, "did testify and was cross-examined by Tebelman's attorney.[172] Thus, regardless of whether G.B.'s statements to Gable were or weren't testimonial, because

---

[168] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946) (internal quotation marks omitted).  Although *Brecht* was decided prior to the passage of the AEDPA, the Supreme Court has expressly held that the *Brecht* standard is still applicable when reviewing purported instances of harmless error in federal habeas cases.  *See*, *Fry v. Pliler*, 551 U.S. 112, 119-20 (2007).

[169] *Vasquez*, 496 F.3d at 575 n.8 (quoting *Van Arsdall*, 475 U.S. 684).

[170] *Brecht*, 507 U.S. at 637.

[171] *Crawford*, 541 U.S. at 59 n.9.

[172] ECF # 9 at 20 n.1.

she testified at trial and was subject to cross-examination, the plain teaching of the Supreme Court in *Crawford* is that "the Confrontation Clause places no constraints at all on the use of [G.B.'s] prior testimonial statements [to Gable]."[173]  Accordingly, and for the reasons stated, no Confrontation Clause issue is  presented by the admitting of  Gable's testimony as to anything she may have been told by G.B. during their therapy sessions.[174]

If there  is  no  federal  constitutional  issue  as  to  any  potential  violation  of  the Confrontation Clause, a statement's admissibility is determined solely by application of the relevant evidentiary laws.[175]  In this case, the relevant evidence law applicable to admitting Gable's testimony , as noted by the appeals court, was Ohio Evidence Rule 803(4).  To the extent a petitioner's claim is based only upon state law, the petitioner has not stated a claim for federal habeas relief.[176]  Indeed, as the Sixth Circuit has stated, federal habeas review of evidentiary rulings based on state law is "extremely limited."[177]  An issue concerning the admissibility of evidence as a matter of state law does not rise to the level of constitutional

---

[173] *Crawford*, 541 U.S. at 59 n.9.

[174] Obviously, this same reasoning would apply to the testimony of any other persons who testified as to statements made to them by G.B., were such statements identified as part of this claim for relief.

[175] *Davis*, 547 U.S. at 821; *Johnson*, 581 F.3d at 326.

[176] *Lewis v. Jeffers*, 497 U.S. at 780 (1990); *Danner v. Motley*, 448 F.3d 372, 375-76 (6th Cir. 2006).

[177] *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006).

magnitude and so provide a basis for habeas relief unless the error can be viewed as so egregious that the petitioner was denied a fundamentally fair trial.[178]

Moreover, the Supreme Court has defined "very narrowly" the category of errors that constitute violations of "fundamental fairness."[179] "'Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, critical highly significant factor.'"[180] But, as the Supreme Court has emphasized, "it is not the province of the federal habeas court to reexamine state-court determinations of state-law questions."[181] Federal courts are also bound by decisions of state appeals courts unless convinced that the state supreme court would act otherwise.[182]

Here, the state appeals court's decision to admit Gable's testimony as a matter of state law did not violate fundamental fairness. First, as noted, Gable's testimony as to what G.B. may have said in a therapy session was not a crucial, critical highly significant piece of evidence in light of the fact that G.B. herself testified at trial. Moreover, there is no basis to believe that the Ohio Supreme Court would have decided the question of admissibility

---

[178] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis*, 497 U.S at 780.

[179] *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2008) (quoting *Dowling v. United States*, 493 U.S.342, 352 (1990).

[180] *Ege v. Yukins*, 485 F.3d 364, 375 (6th Cir. 2007) (quoting *Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000)).

[181] *Estelle*, 502 U.S. at 68.

[182] *Olsen v. McFaul*, 843 F.2d 918, 929 (6th Cir. 1988).

differently from the state appeals court, given that the appellate court structured its opinion around the particular points of the recent holding of the Ohio Supreme Court in *Muttart*.

Accordingly, Tebelman's second ground for relief should be denied on the merits.

**3.**    ***Ground three – that the verdict was against the manifest weight of the evidence and not supported by sufficient evidence – should be dismissed insofar as it raises the non-cognizable claim of manifest weight of the evidence and denied in part as to the sufficiency of the evidence. The decision of the state court in that respect was not contrary to or an unreasonable application of clearly established federal law.***

As to ground three, Tebelman in his traverse acknowledges that any claim that the verdict was against the manifest weight of the evidence does not state a cognizable claim for federal habeas relief.[183]  Indeed, in the traverse he effectively withdraws that portion of his petition, stating that the petition simply incorporated the language of his state appeal wherein his attorney elected to "argue both standards simultaneously."[184]  The manifest weight of the evidence portion of ground three should be dismissed.

As to the sufficiency of the evidence portion of that ground, both Tebelman, in raising the matter on appeal,[185] and the appeals court, in deciding the question,[186] rested their respective analyses on the test articulated in the Ohio case of *State v. Jenks*.[187]  *Jenks*, in turn,

---

[183] ECF # 14 at 11.

[184] *Id.* at 12.

[185] ECF # 9, Attachment at 23.

[186] *Id.* at 79.

[187] *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 at ¶ 2 of the syllabus (1991) (superseded on other grounds by Constitutional Amendment as stated in *State v. Smith*, 80 Ohio St. 3d 89, 684 N.E.2d 668 (1997)).  This paragraph of the syllabus explicitly cites *Jackson v. Virginia* and indicates that its standard for determining sufficiency of the evidence

-35-

is expressly based on the clearly established federal law of *Jackson v. Virginia*.[188]  The well-known *Jackson* standard, adopted in Ohio by *Jenks*, states that evidence is sufficient for conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact found the essential elements of the offense proven beyond a reasonable doubt.[189]

Here, the state appeals court began its review by setting out the elements of the crime of rape under the essential language of Ohio Revised Code § 2907.02(A)(1)(b):

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>
> ***
>
> [T]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person.[190]

The appeals court then noted, "in addition to the elements above, the prosecution had to prove the following three specifications:  G.B. was under ten years of age, Tebelman compelled her to submit by force or threat of force, and Tebelman caused G.B. to suffer serious physical harm."[191]

_____

is followed in Ohio.

[188] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[189] *Id.* at 324; *Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d at 494 (¶ 2 of syllabus).

[190] ECF # 9, Attachment at 79 (quoting Ohio Rev. Code § 29017.02(A)(1)(b).

[191] *Id.*

Applying the *Jackson/Jenks* standard to these factors, the appellate decision found first that "G.B. had just turned five years old when the incident occurred, and was thereby well under ten years of age."[192]  Next, the court found that evidence at trial was that Tebelman had lived with G.B. and her mother for over two and a half years, becoming G.B.'s "caretaker" who she "affectionately call[ed] ... her Robbie."[193]  Further, after giving summaries of the medical testimony, the appeals court observed that "these [medical] witnesses demonstrated that the injuries to five year-old G.B. were significant and that she suffered prolonged pain over a period of at least two weeks."[194]  Thus, the court concluded, there was "no question" that the evidence was sufficient to show that G.B. had suffered serious physical harm.[195]

Thus, the opinion noted, "the only issue Tebelman contests is whether the prosecution offered sufficient evidence to identify and convict him as the perpetrator."[196]  To that end, the Ohio appeals court noted that the victim herself had testified at trial that Tebelman was

---

[192] *Id.*

[193] *Id.*  I note in this regard that although it was not specifically cited by the state appeals court in this opinion, Ohio law is clear that the element of force or threat of force in cases involving the rape of a minor child by a parent can be established by evidence of the "filial obligation of obedience to the parent," since "[f]orce need not be overt and physically brutal, but can be subtle and psychological."  *State v. Eskridge*, 38 Ohio St. 3d 56, 58-59, 526 N.E.3d 304, 306 (1988).  Thus, the evidence cited of G.B.'s attachment to " her Robbie" as a father figure would, under *Eskridge* be sufficient as a matter of Ohio law to establish force or threat of force.

[194] ECF # 9, Attachment at 80.

[195] *Id.*

[196] *Id.*

the person who raped her and had consistently told the same thing "numerous times" to other witnesses.[197]

Accordingly, the court found that after viewing the above-summarized evidence in the light most favorable to the prosecution, "the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that Tebelman committed the offense of rape."[198]

Here, Tebelman's arguments about sufficiency of the evidence are simply a request to "this Honorable Court to look again at the testimony of the alleged child victim;" testimony Tebelman asserts is full of "inconsistencies and lack of evidentiary support for the charges against petitioner ...."[199] Plainly, undertaking a *de novo* review of a witness' credibility in a sufficiency of the evidence claim is beyond the scope of a federal habeas court.  As the Sixth Circuit clearly stated in *Brown v. Konteh*,[200] in conducting a review for sufficiency of the evidence under *Jackson*, the federal habeas court "do[es] not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury."[201]

Accordingly, after considering the decision of the state appeals court in light of the *Jackson* standard and the record as found by the state appeals court, the third ground for

---

[197] *Id.*

[198] *Id.*

[199] ECF # 14 at 13.

[200] *Brown v. Konteh*, 567 F.3d 191 (6th Cir. 2009).

[201] *Id.* at 205 (citation omitted).

relief should be denied on the merits because the decision of the state court was not contrary

to, or an unreasonable application of, the clearly established federal law of *Jackson*.

**4.     *Ground four – that the trial court abused its discretion in sentencing Tebelman to the maximum sentence – should be dismissed as non-cognizable.***

In the fourth and final ground for relief Tebelman argues that the trial court abused

its discretion in sentencing him to a maximum sentence without consideration of specific

factors listed in Ohio law.[202]   In his Ohio appeal, Tebelman largely argued this question

solely as a matter of Ohio law, with only a few additional cursory, general references to the

sentence being a denial of federal constitutional rights to "due process" or to "a fair trial."[203]

The state appeals court denied this claim exclusively on state law grounds, finding:

(1) that  trial courts have full discretion to impose any sentence within the statutory range

without any prior findings of fact; and (2) that under Ohio Revised Code § 2907.02(B), if the

victim (a) incurred serious harm during the commission of the crime or (b) was under the age

of ten, then the maximum authorized sentence could include life without the possibility of

parole.[204] Because, as the state court noted, the jury had found that G.B. had suffered serious

harm during the rape and that she was under ten years of age, the trial court was "acting

---

[202] ECF # 1 at 9.

[203] ECF # 9, Attachment at 26-30; 68.

[204] *Id.*, at 80.

clearly within its statutory authority" in Ohio law by sentencing Tebelman to a life term without the possibility of parole.[205]

Ground four was not fairly  presented to any Ohio court as a federal constitutional issue.  The perfunctory addition of general language regarding a denial of due process or a fair trial does not suffice to convert a state law claim into a fairly presented federal constitutional claim.[206]  While fair presentment is a component of exhaustion,[207] a not fairly presented claim may be regarded as exhausted where, as here, no further state remedies are available.[208]

The federal constitution imposes no barrier on the imposition by a state trial court of any sentence within the statutory range, including a maximum sentence.  Indeed, as the Sixth Circuit has recently found in *Ruhlman v. Brunsman*,[209] subsequent to the Ohio Supreme Court's 2006 holding in *State v. Foster*,[210] "Ohio trial courts have full discretion to impose any sentence within the ranges of [the statute], including the statutory maximum, without making any specific findings of fact or explaining their decisions on the record."[211]  Thus,

---

[205] *Id.*

[206] *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (citations omitted).

[207] *See*, *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[208] *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).

[209] *Ruhlman v. Brunsman*, 664 F.3d 615, 2011 WL 6441210 (6th Cir. 2011).

[210] *State v. Foster*, 109 Ohio St. 3d 1, 845 N.E. 2d 470 (2006).

[211] *Ruhlman*, 664 F.3d 615, 2011 WL 6441210, at *2 (citations omitted).

-40-

*Ruhlman* continued, where, as here, a separate Ohio statute provides that a sentence may be enhanced upon a jury's findings of additional factors, no federal constitutional rights – such as to due process, or to be free of *ex post facto* laws or to have decisions that are subject to meaningful judicial review – are implicated by the imposition of such a sentence upon a defendant where a jury has found facts necessary for that sentence.[212]

In Tebelman's case, as the appeals court noted, a specific Ohio statute made Tebelman subject to life imprisonment without the possibility of parole if he caused G.B. serious physical harm during the rape, or if G.B. was under ten years old.  As the Ohio court further noted, a jury found both of these factors were present in Tebelman's case.  Thus, as understood in light of the Sixth Circuit's recent holding in *Ruhlman*, there is no federal constitutional impediment to such a sentence.

Accordingly, this claim should be dismissed as a non-cognizable question of state law or, alternatively, denied because the state appeals court decision was not contrary to, or an unreasonable application of, clearly established federal law.

## Conclusion

For the foregoing reasons, I recommend dismissing in part and denying in part the petition of Robert Tebelman for a writ of habeas corpus under 28 U.S.C. § 2254.

Dated:  January 30, 2012                          s/ William H. Baughman, Jr.
                                                  United States Magistrate Judge

---

[212] *Id.*, at **3-7.

-41-

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[213]

---

[213] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-42-